THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 South Carolina Department of Social Services, Respondent,
 v.
 Melanie Gunderson, Kenneth Beultel, Kenneth Olson, John Doe, Defendants,
 of whom Kenneth Olson is Appellant.
 
 In the interest of: D. S. (12/2/94); 
 
 C. N.-F. (9/21/01); G. N.-F. (2/4/97); 
 Minors under the age of 18.
 
 
 
 

Appeal From Oconee County
 Timothy M. Cain, Family Court Judge
Unpublished Opinion No. 2007-UP-256
Submitted May 1, 2007  Filed May 24, 2007  
AFFIRMED

 
 
 
 Timothy C. Merrell, of Seneca, for Appellant.
 Kimberly Renae Welchel, of Walhalla, for Respondent.
 
 
 

PER CURIAM:  In this family court action, Kenneth Olson (Father) appeals the family courts order terminating his parental rights.  We affirm.[1]  
 
FACTS
Father is the biological father of G. N.-F. (Child). This appeal arises from the family courts termination of Fathers parental rights on June 1, 2006, for the following statutory grounds: (1) Child has been out of the home for six months and Father has failed to visit Child; and (2) Child has been out of the home and Father failed to support Child for a period of six months prior to the commencement of the termination of parental rights (TPR) proceedings. 
 
Child was born on February 4, 1997, and resided with his mother until the Department of Social Services (DSS) took him into custody on July 17, 2002. At the time, DSS was unaware of Fathers identity and believed someone else was Childs father. 
 
On September 8, 2004, DSS instituted this action seeking termination of parental rights and named Father, a Minnesota resident, as defendant.  Father submitted to a paternity test, which revealed he was Childs father.  While the TPR action was pending, Heidi Shustarich, the biological aunt of another child involved in the case who is Childs brother and a resident of Minnesota, filed a third-party petition requesting custody of her biological nephew and Child.  On October 10, 2005, the family court ordered the two children continue residing with Shustarich but custody remain with DSS.  Additionally, the family court ordered that Father not have visitation with Child because Child was unaware of Fathers existence; however, the family court noted Father could file any appropriate pleadings and/or motions in the matter and take any appropriate action.  Further, the order provided, this [c]ourt will not issue a formal order that [Father] pay child support for the minor child . . . .  This [o]rder does not relieve [Father] of any moral and/or legal obligation of child support. 
 
During the TPR hearing on May 9, 2006, Father testified he did not seek visitation because he did not know where Child was until October of the previous year.  He stated the family court ordered he could not have any visitation with child.  He also testified Shustarichs residence where Child resided was three blocks away from him, but he still did not see Child. 
 
As to paying child support, he testified he wanted to pay, but he was not given any of [his] God-given rights to see this child.  Further, he stated the court never ordered him to pay child support and DSS asked him only once, in November 2004, to submit a financial report. 
 
Father testified he sometimes babysat Child when Child was an infant.  He explained Childs mother asked him to watch Child for three days but did not return for a week.  At that point, he set the rule down . . . [that she] prove the child is mine or please do not bother me anymore because I have [another] child that I need to take care of.  He testified he never heard from either Child nor his mother until this action.  
 
Paula Achenbach, Childs therapist, testified she believed even if Child met Father, Child could not live with Father.  She stated Child was in a pre-adoptive home and it would make his reactive attachment disorder worse.  
 
Denise Hudson, a foster care worker for DSS, testified she sent a treatment plan to Father.  The treatment plan provided Father have a psychological evaluation, attend anger management and parenting classes, and maintain employment as well as clean and stable housing.  She also testified there was a six month period after Father received the results of the paternity test in February of 2005, but before the family court ordered no visitation; however, Father did not visit Child.
 
Following the hearing, the family court found, pursuant to section 20-7-1572(3) and (4) of the South Carolina Code (Supp. 2005), Child had been removed from Fathers home for more than six months, and Father failed to visit or support Child.  The family court also found termination to be in Childs best interest and, therefore, terminated Fathers parental rights.  This appeal followed.  
 
STANDARD OF REVIEW
In a TPR case, the appellate court has jurisdiction to examine the entire record to determine the facts in accordance with its own view of the evidence. Doe v. Baby Boy Roe, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct. App. 2003) (citing Richland County Dept of Soc. Servs. v. Earles, 330 S.C. 24, 32, 496 S.E.2d 864, 866 (1998)).  In our examination, the best interest of the child is our paramount consideration.  Roe, 353 S.C. at 579, 578 S.E.2d at 735.  Additionally, the grounds for TPR must be proved by clear and convincing evidence.  S.C. Dept of Soc. Servs. v. Parker, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999) (citing Santosky v. Kramer, 455 U.S. 745, 747-48 (1982) (holding [b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence)).  Our broad scope of review does not require us to disregard the findings below or ignore the fact the trial judge was in a better position to assess the credibility of the witnesses.  S.C. Dept of Soc. Servs. v. Cummings, 345 S.C. 288, 293, 547 S.E.2d 506, 509 (Ct. App. 2001) (citing Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996)).
LAW/ANALYSIS

Father argues the family court erred by terminating his parental rights for failure to visit Child.  Specifically, Father argues Section 20-7-1572(3) of the South Carolina Code (Supp. 2006) provides a TPR proceeding may be commenced if a child has lived outside the home for six months and the parent has willfully failed to visit but it must be shown that the parent was not prevented from visiting by the party having custody or by court order.   He contends a court order prevented him from visiting Child.  We disagree.
Section 20-7-1572 governs actions for TPR in South Carolina and provides [t]he family court may order termination of parental rights upon a finding of one or more of the [statutory] grounds and a finding that termination is in the best interest of the child.  In this case, the family court found termination was proper because Father failed to visit Child for a period of six months after removal.
Although the October 2005 order provided for no visitation between Father and Child, the order did state Father could seek visitation by filing the appropriate pleadings or motions.  Father did not take any affirmative action to see Child.   Further, by Fathers own admission, he definitively knew he was Childs father in February 2005, but did not seek any visitation with Child.  Therefore, from February until the family court entered its order on October 10, 2005, Father could have attempted to gain visitation with Child but did not do so.[2]  Accordingly, the record supports the family courts finding that Father willfully failed to visit Child.[3]
Furthermore, we find evidence in the record supports the family courts finding that TPR is in the best interest of Child.   Child is in a pre-adoptive home with his half-sibling, and his foster parents intend to adopt Child once he is freed for adoption.  Childs therapist testified Fathers parental rights should be terminated so Child will have stability in his life.  Additionally, Father knew he could have been Childs father but did nothing to establish any contact for almost ten years. 
 
Accordingly, the order of the family court is 
AFFIRMED.
HEARN, C.J., KITTREDGE, J., and CURETON, A.J.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The hearing occurred on August 30, 2005, and it is unclear from the record if the family court ordered no visitation at this time or if no visitation was mandated by the October order.  However, even if no visitation was ordered in August, six months elapsed from when paternity was established on February 15 until August 30.  
 
[3] Because we find one of the statutory grounds for termination was met, we need not address the other grounds.  See Dept of Soc. Servs. v. Pritchett, 296 S.C. 517, 519, 374 S.E.2d 500, 501 (Ct. App. 1988).