**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

April Gosnell and David Tesnear, Defendants.

Of whom April Gosnell is the Appellant.

In the interest of minor children under the age of eighteen.

Appellate Case No. 2014-000783

———————————

Appeal From Greenville County
Alex Kinlaw, Jr., Family Court Judge

———————————

Unpublished Opinion No. 2015-UP-177
Heard March 3, 2015 – Filed March 31, 2015

———————————

**REVERSED AND REMANDED**

———————————

Samuel Carl Weldon, of Weldon Hammond Law Firm, LLC, of Greenville, for Appellant.

Deborah Murdock Gentry, of Murdock Law Firm, LLC, of Mauldin, for Respondent.

Don J. Stevenson, of Greenville, for Guardian ad Litem.

**THOMAS, J.:** April Gosnell (Mother) appeals the termination of her parental rights to her two children, arguing the family court erred in finding (1) clear and convincing evidence supported three statutory grounds for termination of parental rights (TPR) and (2) TPR was in the children's best interest. We reverse and remand.[1]

The family court may order TPR upon finding one or more of statutory grounds is met and finding TPR is in the children's best interests. S.C. Code Ann. § 63-7-2570 (Supp. 2014). In a TPR action, the best interests of the children are the paramount consideration. *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000). "A state must prove a case for [TPR] by clear and convincing evidence." *S.C. Dep't of Soc. Servs. v. Michelle G.*, 407 S.C. 499, 504, 757 S.E.2d 388, 391 (2014). "Upon review, this [c]ourt is entitled to make its own determination whether the grounds for termination are supported by clear and convincing evidence." *Id.* "However, this scope of review does not require this [c]ourt to disregard the findings of the family court, which was in a better position to evaluate the credibility of the witnesses and assign weight to their testimony." *Id.*

Although the Department of Social Services' (DSS's) involvement with Mother dates back to 2007, this case hinges on the significance given to a lone drug test from June 11, 2013. The children were removed in October 2012 because Mother and one child tested positive for methamphetamines, and Mother was given a treatment plan. Mother completed all aspects of the plan, which included a drug and alcohol course, except that on June 11, 2013, she tested positive for methamphetamines. However, this positive test was bordered by negative drug tests on May 3, 2013, and June 27, 2013.[2] Additionally, Mother's June 11 test barely passed the threshold for a positive test. At the TPR hearing, an expert testified the test registered 599 picograms per milligram (ppm) and anything below 500 ppm was considered a negative test.[3] Mother argued the positive June 11 test

---

[1] The family court also terminated the parental rights of David Tesnear (Father) to the children. Father did not file an appeal with this court. Therefore, this appeal has no effect on the family court's termination of Father's parental rights.

[2] Mother paid for the June 27 test out of pocket after asserting she did not know how the June 11 test registered a positive result.

[3] For comparison, Mother's positive test in October 2012 registered 3,024 ppm.

may have resulted from "contact exposure" from other members of her Narcotics Anonymous (NA) meetings, although she presented no scientific testimony to this effect at the TPR hearing. The DSS caseworker testified Mother passed an additional drug test in November 2013. Although the November 2013 test was the last test administered by DSS, the caseworker believed Mother passed an additional "four or five" urine tests administered through her pretrial intervention program and her NA meetings.

The family court granted TPR on three grounds: (1) Mother failed to remedy the conditions that caused removal; (2) the children were harmed, and because of the severity or repetition of the abuse or neglect, it was not reasonably likely the home could be made safe within twelve months; and (3) Mother had a diagnosable condition of drug addiction that was unlikely to change within a reasonable time and made her unlikely to provide minimally acceptable care for the children. *See* § 63-7-2570(1), (2), and (6).

Having conducted a de novo review of the record, we find the family court erred in finding DSS proved any statutory grounds for TPR by clear and convincing evidence. Specifically, we find all three grounds for TPR were causally linked to Mother's single positive drug test.

As to the first ground for TPR, we find this evidence does not clearly and convincingly show Mother failed to remedy the conditions that caused removal. *See* § 63-7-2570(2) (providing a TPR ground exists when the child "has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent and the parent has not remedied the conditions which caused the removal"). To the contrary, the record shows Mother took meaningful steps to address her drug problem. *Cf. Dep't of Soc. Servs. v. Phillips*, 365 S.C. 572, 579-80, 618 S.E.2d 922, 925-26 (Ct. App. 2005) (holding a mother failed to remedy the conditions that caused removal when she "failed to meaningfully address her drug addiction problem over an extended period of time"). Specifically, Mother passed multiple drug tests since the June 11 test, attended NA meetings almost daily, and spoke with her sponsor regularly. *Cf. id.* (finding a failure to remedy the conditions that caused removal when the mother failed or refused to take multiple drug screens after her children's removal, did not seek treatment or counseling until several months after removal, and later discontinued counseling); *S.C. Dep't of Soc. Servs. v. Cummings*, 345 S.C. 288, 294-95, 547 S.E.2d 506, 509-10 (Ct. App. 2001) (finding a mother failed to remedy her cocaine abuse when she failed to complete five different drug abuse

counseling courses after removal, tested positive for cocaine three times, and refused or did not make herself available for seven other screenings). Mother admitted she initially went to NA meetings only because she was required to, but she testified she now went because she felt they made her a better person and better parent. Mother also volunteered with programs providing NA services to prisoners, hospital patients, and women recently released from incarceration.

Additionally, we find the evidence does not clearly and convincingly show that because of the severity or repetition of abuse or neglect, the home cannot be made safe within twelve months. *See* § 63-7-2570(1) ("The child or another child while residing in the parent's domicile has been harmed as defined in [s]ection 63-7-20, and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months."). Besides Mother's affirmative steps to address her drug problem, the record showed she had distanced herself from individuals with whom she once used drugs. Notably, Mother testified she made her ex-boyfriend move out in May 2013 after he was released from jail for serving time on a domestic violence charge. Mother claimed her ex-boyfriend was the main concern that DSS had with her living arrangements.[4] At the time of the TPR hearing, Mother owned her own home and did not have a boyfriend. *See Shake v. Darlington Cnty. Dep't of Soc. Servs.*, 306 S.C. 216, 221, 410 S.E.2d 923, 925-26 (Ct. App. 1991) (finding clear and convincing evidence did not support TPR on the ground of severe or repetitive abuse or neglect when the relevant testimony primarily concerned a single incident when the mother's then-boyfriend used excessive corporal punishment on the child).

Finally, we find the evidence does not clearly and convincingly show Mother has a diagnosable condition that is unlikely to change within a reasonable time. *See* § 63-7-2570(6) ("The parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, addiction to alcohol or illegal drugs . . . and the condition makes the parent unlikely to provide minimally acceptable care of the child."). Since the children were removed in October 2012, the June 11 test was the only evidence indicating Mother continued to use drugs. Notably, the DSS caseworker testified that but for the June 11 test, DSS would not have sought TPR. The guardian ad litem also testified that without the June 11 test, she would have no issues with the children returning to Mother.

---

[4] The DSS caseworker conceded Mother's living conditions prior to DSS's involvement were satisfactory.

Because no statutory ground supports TPR, we need not consider whether TPR would be in the children's best interests. *See Stinecipher v. Ballington*, 366 S.C. 92, 101 n.7, 620 S.E.2d 93, 98 n.7 (Ct. App. 2005) ("[A] family court need not reach best interest when no ground for termination exists."). Accordingly, we reverse the family court's TPR as to Mother and remand this case to the family court for a permanency planning hearing in conformity with section 63-7-2580(B) of the South Carolina Code (2010).

**REVERSED AND REMANDED.**

**GEATHERS, J., concurs.**

**KONDUROS, J.,** dissenting: I respectfully dissent and would affirm the family court's order granting TPR. The children were removed from the home in October 2012 because Mother and the children tested positive for methamphetamines. Although Mother took strides to address her drug addiction, the failed drug test in June 2013 demonstrated Mother has failed to completely remove herself from the culture of drug use. See Dep't of Soc. Servs. v. Pritchett, 296 S.C. 517, 520, 374 S.E.2d 500, 501 (Ct. App. 1988) ("It is significant to note the statute allows for [TPR] where the parent has not remedied the conditions causing removal. This does not suggest that an attempt to remedy alone is adequate to preserve parental rights. Otherwise, the statute would be couched in such terms. The attempt must have, in fact, remedied the conditions."). Accordingly, I believe clear and convincing evidence shows Mother did not remedy the conditions that caused removal.

I would also find clear and convincing evidence supports TPR on the ground of severity or repetition of abuse or neglect. The record shows DSS has been involved with the family since 2007, and the children were removed once before due to Mother's drug use in 2009. See § 63-7-2570(1) ("In determining the likelihood that the home can be made safe, the parent's previous abuse or neglect of the child or another child may be considered."). Considering Mother's positive June 2013 test in light of her previous history of abuse and neglect towards the children—especially the children's positive drug tests—I do not believe the home could be made safe within twelve months.

Finally, I would find clear and convincing evidence shows Mother has a diagnosable condition unlikely to change within a reasonable time. Mother completed a treatment plan after the children were removed the first time in 2009, but in spite of her completion of the treatment plan, the children were removed

again in 2012 due to Mother's continued drug use.  Additionally, the June 2013 positive drug test demonstrated she did not successfully complete her current treatment plan.  Therefore, I believe her condition should be presumed unlikely to change.  See § 63-7-2570(6) ("It is presumed that the parent's condition is unlikely to change within a reasonable time upon proof that the parent has been required by the department or the family court to participate in a treatment program for alcohol or drug addiction, and the parent has failed two or more times to complete the program successfully . . . .").

Having concluded at least one ground for TPR was proven by clear and convincing evidence, I also believe TPR is in the children's best interests.  See Doe v. Baby Boy Roe, 353 S.C. 576, 581, 578 S.E.2d 733, 736 (Ct. App. 2003) (stating once the appellate court finds a statutory ground on which the family court properly granted TPR, the court need only determine TPR was in the child's best interest to affirm).  This case represents the second time Mother has failed to provide the children with a home free from the exposure to drugs.  So long as Mother has drugs in her life, the children will be at risk of further harm and will lack permanency and future stability.  See S.C. Dep't of Soc. Servs. v. Cameron N.F.L., 403 S.C. 323, 329, 742 S.E.2d 697, 700 (Ct. App. 2013) ("[T]his court has considered future stability when determining whether TPR is in a child's best interest.").  Rather than wait another indefinite period of time for Mother to make the true changes in her life that are necessary for her to provide the children with proper parental care, I believe TPR is in the children's best interests so they may be freed for adoption.  See S.C. Dep't of Soc. Servs. v. Sarah W., 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate.").

For the foregoing reasons, I would affirm the grant of TPR.